# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROWLAND PENA, | 1:09-CV-02215 LJO GSA HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| K. ALLISON, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on July 14, 2006, of second degree murder with personal use of a firearm. Petitioner was sentenced to serve an indeterminate term of 16 years-to-life in state prison.

Petitioner filed a timely notice of appeal. On March 14, 2008, the California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA"), affirmed Petitioner's judgment

---

[1] This information is derived from the state court records lodged by Respondent with his response and is not subject to dispute.

1

except for an amendment reflecting an additional 11 days of custody credit. He then filed a petition for review in the California Supreme Court. The petition was summarily denied on June 11, 2008.

On December 21, 2009, Petitioner filed the instant federal habeas petition. He presents the following four (4) claims for relief: 1) The trial court's instructions to the jurors instructing them to refrain from requesting a readback of testimony deprived Petitioner of due process and his right to a jury trial; 2) The evidence was insufficient to prove beyond a reasonable doubt that Petitioner used a deadly or dangerous weapon during the commission of the murder; 3) The trial court failed to instruct on jury unanimity with respect to the weapon enhancement; and 4) Jury instruction CALCRIM No. 220 violated Petitioner's federal due process right to have his guilt determined beyond a reasonable doubt.

On June 4, 2010, Respondent filed an answer[2] to the petition. On August 11, 2010, Petitioner filed a traverse to Respondent's answer.

## STATEMENT OF FACTS[3]

On the evening of December 27, 2005, Daniel and his cohort were beat up in a fight. They immediately went to get Daniel's brother, Rowland, and returned to the neighborhood for retribution. Apparently believing Mario Maya, Jr. had been involved in the earlier fight, they went to his house. Mario's uncle, Alejandro, and Alejandro's stepson were in the front yard. Both Daniel and Rowland were carrying stick-and-knife weapons. Daniel waved the weapon, then he and Rowland used the weapons to break Mario's window and fight Mario and Alejandro through the window. Mario came into the front yard and fought with Daniel. During the struggle, Daniel stabbed Mario repeatedly. As that struggle occurred, Mario's younger brother, Jesse, approached the scene with a kitchen knife. Rowland stopped him when he came up to Jesse and threatened him with the stick-and-knife weapon. But just as Rowland prepared to swing the weapon, Jesse stabbed him with the kitchen knife. As others approached, Jesse ran away. Mario's aunt, Elizabeth, was hitting Daniel with a mop and broom, trying to remove him from Mario. Rowland approached her and told her Mario had "jumped" his brother. When she told Rowland that Mario had not jumped anyone, he looked shocked. He pulled Daniel off Mario and they ran to their vehicle and sped away. The entire incident at the Maya residence lasted only a few minutes. Mario died at the hospital that evening from stab wounds. He was 20 years old.

---

[2]Respondent states the petition violates the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). However, Petitioner states he is deserving of equitable tolling. Respondent states that in light of Petitioner's contentions it would be more prudent to address the merits of the petition before addressing the more complicated statute of limitations issue. The Court agrees and will address Petitioner's claims.

[3]The Fifth DCA's summary of the facts in its March 14, 2008, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the Fifth DCA.

(See Resp't's Answer Ex. A.)

**DISCUSSION**

I.      Jurisdiction

      Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.      Standard of Review

      The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

1    As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

III.   Review of Claims

   A.   Readback of Testimony

In his first ground for relief, Petitioner argues the trial court discouraged the jury from asking for a readback of testimony thereby violating his rights to due process and a fair trial. Petitioner presented this claim on direct appeal to the Fifth DCA and California Supreme Court. Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

In denying Petitioner's claim, the appellate court stated as follows:

> Prior to opening statements and the presentation of evidence, the court instructed the jury regarding notetaking and readback of testimony, in relevant part, as follows:
>
> "All of you have been given notepads and pencils. I'll tell you a little bit about the use of those. You may take notes during this trial.... You'll be able to use notes during your deliberations and take them back to the jury room for use in your deliberations. [¶] A word of caution; you may take notes; however, you should not permit note taking to distract you from the ongoing proceedings. Remember, you are the judges of the believability of the witnesses. Further, notes are only an aid to memory and should not take precedence over independent recollection. And the juror who does not take notes should rely upon his or her independent recollection of the evidence and not be

influenced by the fact that other jurors do take notes.

"Notes are for the note-taker's own personal use in refreshing his or her recollection of the evidence. That means you put on that pad whatever helps refresh your recollection-if it's words, numbers, or pictures-because you're the only one that can consult with it at the end of the trial. If you get back in the jury room, you find somebody wasn't paying attention, you can't pull out your pad and say, 'I have it written right here,' because your pads are not official record. The official record is the reporter's transcript.

"If somebody wasn't paying attention during the trial, you have to ask for a readback. It takes us 45 minutes to set up the courtroom for readback. And the reason it takes so long is that while you're back there deliberating, I will be starting a new trial. After that we'll have new parties in here and ... I will be using the same reporter. And it's not going to be this reporter because this reporter is about to leave us, and I'm going to [be] getting another reporter Monday. We'll have a new reporter starting Monday.

"I will be using that reporter then straight through on the next trial also. So if you need readback, we have to stop that proceeding, clear the courtroom of those people, those jurors. We've got to bring these parties back, bring you back in the courtroom, and she has to look it up in her notes, find out where it was-where it was you need the readback, and the reporter will take the witness stand and read it back to you.

"Now, the reason I mention that to you is we don't like to have to do readback because it's kind of disruptive. But the only way that we can be assured of not doing that is that you pay very close attention during the trial. I can tell you the trial is going to go one or two or three days, and this one undoubtedly is going to do that.

"There are boring parts to this trial. It's not like a TV program. They give you only the interesting stuff. So it gets boring, and sometimes you lose a little bit of concentration. I always like to tell jurors when you find yourself drifting off a little bit, start taking notes. It will kind of wake you up, get you back into the thing again. Because sure enough, when we relax a little bit, something will come in that somebody will think important and you'll get back in the jury room and say, 'Gee, I don't remember that.' So I'll just give you that to help you out a little bit. It will speed up your deliberations also if you don't have to ask for readback."

At the conclusion of the trial, the court instructed the jury with CALCRIM No. 202, as follows:

"You have been given notebooks and may have taken notes during the trial. Please do not remove your notes from the jury room. You may use your notes during deliberations but only to remind yourself of what happened during the trial. Remember, your notes may be inaccurate or incomplete. If there is a disagreement about what actually happened at the trial, you may ask the court reporter to read back the relevant parts of the testimony to assist you. It is the testimony that must guide your deliberations and not your notes."

The jury did not request any readbacks of testimony during its deliberations.

"Pursuant to [Cal. Penal Code] section 1138, the jury has a right to rehear testimony and instructions on request during its deliberations. [Citations.] Although the primary concern of section 1138 is the *jury's* right to be apprised of the evidence, a violation of the statutory mandate implicates a defendant's right to a fair trial conducted '"substantially [in] accord[ance with] law."' [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 1007.)

> Here, the court accurately informed the jury that readbacks of testimony involve delay and can disrupt other court proceedings; it never indicated that requests for readbacks would not be honored. (Cf. *People v. Hillhouse* (2002) 27 Cal.4th 469, 506 [merely informing the jury of the time it may take for rehearing testimony is not impermissible jury coercion].) A fair reading of the court's comments is that the court was recommending notetaking as one way to help individual jurors keep their attention engaged during the trial. Although the court suggested that readbacks necessitated solely by juror inattention might be avoided by notetaking, the court still made clear that if the jurors needed a readback, they would be accommodated. Moreover, at the end of trial, the court clearly informed the jurors, this time without mention of delay or disruption, that they should ask for a readback and rely on the testimony rather than their notes in case of a disagreement. Daniel has not shown the court's comments here amounted to impermissible jury coercion or otherwise violated the jury's or Daniel's right to have the jury provided with readbacks of testimony on request.

(See Resp't's Answer Ex. A.)

Respondent correctly argues that Petitioner's claim is meritless. The claim is entirely based on state law and Petitioner fails to allege a violation of clearly established Supreme Court precedent in support of his claim.  Issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").  Moreover, it is clear the trial court complied with state law.  The trial court informed the jury that readbacks could be disruptive, and therefore, to pay attention during the trial.  The trial court did not state that readbacks would not be allowed.  In fact, the court instructed the jury with CALCRIM No. 202 that readbacks could be requested and provided by the court reporter.  The claim should be denied. See 28 U.S.C. § 2254(d).

B.   Insufficiency of the Evidence

Petitioner next alleges the evidence was insufficient to support the jury's finding that Petitioner used a deadly or dangerous weapon during commission of the murder.  This claim was also presented on direct appeal where it was rejected.  The appellate court issued the last reasoned decision, as follows:

> In the present case, there was substantial evidence Rowland personally used the weapon in the commission of a related series of crimes for the purpose of facilitating Daniel's attack on Mario. When Daniel and Rowland arrived at the Maya residence, Rowland got out of the truck and waved his weapon at Alejandro and his stepson, who

7

were still outside. Daniel and Rowland were armed with similar stick-and-knife weapons by the time they reached the window. Daniel and Rowland used the weapons to break Mario's window and to attack Mario and Alejandro through the window. Mario came outside, most likely through the window, and fought with Daniel. Daniel stabbed Mario repeatedly. At some point, Rowland approached them as they fought. He may or may not have stabbed Mario. [FN5] When Jesse appeared with a kitchen knife, intending to protect his family from the attackers, Rowland approached Jesse with the stick-and-knife weapon. As Rowland prepared to swing it, Jesse stabbed him with the kitchen knife, then ran away as others approached.

FN5. There was testimony that two men were fighting with Mario.

In sum, throughout the incident, Rowland was carrying and had ready access to his weapon to assist Daniel in the commission of Mario's murder. Rowland first brandished his weapon at Alejandro and his stepson. Then he used the weapon to fight with Mario and Alejandro through the broken window. Finally, he used it to fight off Jesse and prevent him from defending Mario. There is no doubt that Rowland's use of the weapon-whether or not he actually stabbed Mario-aided Daniel in the commission of the crime. Thus, Rowland's use of the weapon was instrumental in Mario's murder, a crime for which Rowland was convicted. Substantial evidence supported the weapon use enhancement.

(See Resp't's Answer Ex. A.)

The law on insufficiency of the evidence claim is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324 n.16.  Under California law, "[a]ny person who personally uses a deadly or dangerous weapon in the commission of a felony ... shall be punished by an additional and consecutive term of imprisonment in the state prison for one year...." Cal. Penal Code § 12022(b)(1).  "In order to find 'true' a section 12022(b) allegation, a fact finder must conclude that, during the crime or attempted crime, the defendant himself or herself *intentionally displayed in a menacing manner or struck someone with* an instrument capable of inflicting great bodily injury or death." (See Resp't's Answer Ex. A.)

Here, there was substantial evidence that Petitioner personally used a deadly or dangerous weapon during the commission of the offense.  As discussed by the appellate court, Petitioner menacingly displayed a stick-and-knife weapon.  Under California law, Petitioner need not have

actually struck the victim to be liable.  It is sufficient that he intentionally displayed it in a menacing manner.  As Petitioner fails to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or an "unreasonable determination of the facts in light of the evidence," the claim should be rejected. 28 U.S.C. § 2254(d).

### C.  Juror Unanimity

Petitioner argues the trial court failed to instruct on juror unanimity with respect to the personal use enhancement.  Petitioner states the prosecutor relied on alternative factual theories in support of the weapons use allegation but did not elect to rely upon one.  He alleges the failure to instruct on unanimity violated his due process rights.

This claim was also raised on direct appeal and rejected by the state courts.  In the last reasoned decision, the appellate court stated:

> We first reject Rowland's argument that the jurors might have relied on his mere *possession* rather than his actual use of the weapon. The instructions informed the jurors they were required to determine whether Rowland *used* the weapon, not whether he possessed it. Furthermore, the instructions defined "use." There is no possibility the jurors, despite being so instructed, agreed instead that Rowland was merely armed. To find the personal use allegation true, the jurors had to conclude that during the murder Rowland himself intentionally displayed in a menacing manner or struck someone with the knife. (*People v. Wims, supra,* 10 Cal.4th at pp. 302-303.)
>
> The issue of unanimity that we believe Rowland intends to raise is this: there were multiple acts of Rowland's weapon use upon which the jurors might have relied in finding the enhancement true. We agree there was evidence that Rowland used the knife to threaten Alejandro and Alejandro's stepson, to fight Mario and Alejandro through the window, to stab Mario, and to deter Jesse from coming to Mario's defense.
>
> A defendant is entitled to a verdict in which all 12 jurors concur beyond a reasonable doubt as to each count charged. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "When an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534; *People v. Maury* (2003) 30 Cal.4th 342, 423.) A unanimity instruction "'focuses the jury's attention on a specific act and requires the jury to determine guilt as to that act beyond a reasonable doubt.' [Citation.] The rule is limited by its rationale: 'A unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged.' [Citation.] The same reasoning should, in general, apply to enhancements as well as the crimes that underlie them." (*People v. Robbins* (1989) 209 Cal.App.3d 261, 264-265.)
>
> "'The [unanimity] instruction is designed in part to prevent the jury from

amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.] [¶] On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty. [Citation.]" (*People v. Russo, supra,* 25 Cal.4th at p. 1132.)

In this case, assuming the trial court should have given a unanimity instruction to inform the jurors they were required to agree on one act of Rowland's knife use, the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18; *People v. Wolfe* (2003) 114 Cal.App.4th 177, 188.) Rowland's argument at trial was that he never had a knife at all. The jury's true finding on the enhancement demonstrates the jurors rejected that defense and determined Rowland did in fact have a knife that he used in some manner. The evidence that Rowland used the knife to stab Mario was relatively weak, but the evidence that Rowland threatened and diverted Jesse with a knife was essentially undisputed.[FN6] Therefore, while it is possible, or even likely, that the jurors did not unanimously agree Rowland stabbed Mario, it is simply inconceivable that they did not unanimously agree Rowland intentionally displayed a knife in a menacing manner when he approached Jesse and attempted to divert or dispose of him. On this record, there can be no reasonable doubt that the jury would have reached the same finding on the enhancement had it been given a unanimity instruction. Consequently, any error in failing to give the instruction was harmless beyond a reasonable doubt.

> FN6. For example, Elizabeth testified that Rowland was the only person fighting with Mario, but that testimony was contradicted repeatedly. On the other hand, Jesse's testimony that Rowland approached him with the knife was uncontradicted.

(See Resp't's Answer Ex. A.)

An allegation that a jury instruction is incorrect under state law does not form a basis for federal habeas corpus relief. Estelle, 502 U.S. at 67 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.").  Rather, a habeas court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" Henderson v. Kibbe, 431 U.S. 145, 154 (1977), *quoting* Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); California v. Roy, 519 U.S. 2, 5 (1996) (challenge in habeas to the trial court's jury instructions is reviewed under the standard in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) - whether the error had a substantial and injurious effect or influence in determining the jury's verdict.).  The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on

direct appeal." Id. In addition, the Court notes that Petitioner's burden is "especially heavy" with this claim, because "[a]n omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

As set forth above, the appellate court determined that the trial court erred in failing to instruct on juror unanimity. Nevertheless, the court found the error to be harmless. The Court noted that the jury determined Petitioner personally used a weapon. To reach this determination, the jury had to find that Petitioner either intentionally displayed the weapon in a menacing fashion and/or struck the victim with it. There was evidence from which the jury could find that Petitioner struck the victim with the weapon; however, the evidence was contradicted by other evidence. Therefore, it is possible the jury could have determined Petitioner struck the victim with the weapon thereby "using" it. There was also evidence from which the jury could determine that Petitioner intentionally displayed the weapon in a menacing fashion. This evidence was uncontroverted. Therefore, it is inconceivable that the jury could have determined Petitioner struck the victim with the weapon but did not intentionally and menacingly display it. Thus, the failure to instruct on unanimity did not have a substantial or injurious effect or influence in determining the jury's verdict. This claim should also be denied.

D.   CALCRIM No. 220

Petitioner contends the instruction on reasonable doubt, CALJIC No. 220, violated his due process rights by preventing the jury from considering the lack of evidence in determining his guilt.

This claim was raised and rejected in the state courts. The appellate court rendered the last reasoned decision, as follows:

The jury was instructed with CALCRIM No. 220, as follows:

> "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendants just because they have been arrested, charged with the crime, or brought to trial. The defendant in the criminal case is presumed to be innocent. This presumption requires that the People prove each element of the crime and special allegation beyond a reasonable doubt.
> 
> "Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt, unless I specifically tell you otherwise. Proof beyond a

11

reasonable doubt is proof that leaves you with an abiding conviction the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider *all the evidence that was received throughout the entire trial.* Unless the evidence proves the defendant[s'] guilt beyond a reasonable doubt, they are entitled to an acquittal, and you must find them not guilty." (Italics added.)

In determining the correctness of jury instructions, we consider the instructions as a whole. (*People v. Carrasco* (2006) 137 Cal .App.4th 1050, 1061.) An instruction can be found to be ambiguous or misleading only if, in the context of the entire charge, there is a reasonable likelihood the jury misconstrued or misapplied its words. (*People v. Frye, supra,* 18 Cal.4th at p. 957.)

Reasonable doubt may arise from the lack of evidence at trial as well as from the evidence presented. (*People v. Simpson* (1954) 43 Cal.2d 553, 566.) The plain language of CALCRIM No. 220 does not instruct otherwise. The only reasonable understanding of the language, "[u]nless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty," is that a lack of evidence could lead to reasonable doubt. Contrary to Rowland's claim, CALCRIM No. 220 did not tell the jury reasonable doubt must arise from the evidence. The jury was likely "to understand by this instruction the almost self-evident principle that the determination of defendant's culpability beyond a reasonable doubt ... must be based on a review of the evidence presented." (*People v. Hawkins* (1995) 10 Cal.4th 920, 963, abrogated on another ground in *People v. Lasko* (2000) 23Cal.4th 101, 110; see also *People v. Rios* (2007) 151 Cal.App.4th 1154, 1157.)

Rowland relies on *Simpson* and on *People v. McCullough* (1979) 100 Cal.App.3d 169, which cites *Simpson.* These cases are inapposite. In *Simpson,* the defendant argued that the trial court's instruction on reasonable doubt had shifted the burden to him to prove his innocence. The trial court instructed: "'The term "reasonable doubt," as used in these instructions, means a doubt which has *some good reason* for its existence *arising out of evidence in the case;* such doubt as you are able to find a *reason for in the evidence.*'" (*People v. Simpson, supra,* 43 Cal.2d at p. 565, fns. omitted.) The court held this language was "not necessary" and "could have been confusing" because "reasonable doubt ... may well grow out of the lack of evidence in the case as well as the evidence adduced." (*Id.* at p. 566.) Similarly, in *McCullough,* the court determined a supplemental instruction stating the doubt must arise from the evidence to be erroneous. (*People v. McCullough, supra,* at p. 182.)

Here, unlike in *Simpson* or *McCullough,* the instruction did not tell the jury the reasonable doubt had to arise out of the evidence in the case. It merely said the jury was to consider all of the evidence presented. We see no error.

(See Resp't's Answer Ex. A.)

As previously stated, an allegation that a jury instruction is incorrect under state law does not form a basis for federal habeas corpus relief. Estelle, 502 U.S. at 67. To merit habeas relief, the ailing instruction must have so affected the entire trial that the resulting conviction violates due process. Henderson, 431 U.S. at 154. In this case, it is clear CALCRIM No. 220 did not

instruct the jury that reasonable doubt must arise from the evidence and not from the lack of evidence. The instruction informed the jury that it must consider *all of the evidence* received at trial. Under no reasonable interpretation could the instruction be understood as preventing the jury from considering the lack of evidence. Petitioner fails to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1). The claim should be denied.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   October 19, 2010                       /s/ Gary S. Austin
                                         UNITED STATES MAGISTRATE JUDGE